**Johnny Lee DUKES, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 05–06–00937–CR.

Court of Appeals of Texas, Dallas.

Nov. 28, 2007.

Scala D. Byers, Garland, for Appellee.

Elizabeth Elkins, Dallas, for State.

Before Justices WHITTINGTON, WRIGHT, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

This appeal from a conviction for violation of a protective order concerns issues that arise when the protective order incorrectly states the complainant's address.

Johnny Lee Dukes was found guilty by a jury of violation of a protective order, and the trial court sentenced appellant to 210 days' confinement in jail. The court suspended imposition of the sentence and placed appellant on community supervision for twelve months. Appellant brings three issues, contending (1) the trial court erred in allowing the State to amend the information on the day of trial, (2) the evidence is legally insufficient to prove appellant violated the protective order, and (3) the trial court abused its discretion in overruling appellant's motion for mistrial after the State impermissibly commented on appellant's failure to testify. We affirm the trial court's judgment.

## BACKGROUND

On August 18, 2005, appellant's wife, Georgette Dukes, the complainant in this case, who is legally blind, applied for a protective order to protect herself from appellant. The court issued the protective order, which, among other provisions, prohibited appellant from "[g]oing to or within

500 feet of the residence of Georgettà [sic] Dukes, or a member of the family or household of Georgetta [sic] Dukes, to-wit: 111617 Hickory Garden Dr. . . ." Appellant was served in court the same day with the order. On September 12, 2005, appellant went to complainant's residence. The State charged appellant by information with violation of a protective order. The charging instrument alleged appellant

> did unlawfully and knowingly go to and near the residence of Georgette Dukes, . . . a protected individual, at, 111617 Hickory Garden Drive, . . . in violation of an order issued by the 292nd Judicial District Court of Dallas County, Texas, . . . and such place was specifically described in the aforesaid order.

On the day of trial, but before the trial commenced, the State moved to amend the information to strike the first "1" in the address to read "11617 Hickory Garden Drive." Appellant objected to the amendment as "untimely and done on the day of trial." The court overruled appellant's objections and amended the information by striking the initial "1" in the address. During the trial, complainant testified that on September 12, 2005, she was living at "11617 Hickory Gardens [sic] Drive." She testified that appellant also used to live at that residence and knew it was her residence. Complainant also testified that she had never lived at 111617 Hickory Garden Drive.

The application paragraph of the jury charge stated,

> Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that [appellant] . . . did unlawfully then and there intentionally or knowingly go to or near the residence of Georgette Dukes, . . . a protected individual,

at 11617 Hickory Garden Drive, . . . in violation of an order . . .; and said place was specifically described in the aforesaid order, you will find [appellant] . . . guilty as charged in the information. . . .

The jury found appellant guilty as charged in the information.[1]

## AMENDMENT OF THE INFORMATION

■ In his first issue, appellant asserts the trial court erred in allowing the State to amend the information on the day of trial. After notice to the defendant, the charging instrument may be modified before the day of trial. If requested by the defendant, the court must allow the defendant time to respond to the amended charging instrument. TEX.CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon 2006). After the trial on the merits commences, the charging instrument may be amended if the defendant does not object. *Id.* art. 28.10(b). However, the charging instrument may not be modified on the day of trial before the trial on the merits commences. *State v. Murk*, 815 S.W.2d 556, 558 (Tex.Crim.App.1991). These requirements, however, do not apply when an information's language is abandoned surplusage and not a substantive amendment. *See Hall v. State*, 62 S.W.3d 918, 919 (Tex. App.-Dallas 2001, pet. ref'd). "Surplusage is defined as unnecessary words or allegations in an indictment that are not descriptive of what is legally essential to constitute the offense." *Id.*

■ Under section 25.07 of the penal code, as applicable to this case, the required elements for violation of a protective order are: (1) a person (2) in violation of an order issued under section 6.504 or

---

1. The protective order, original and amended information, and jury charge also included complainant's city, state, and zip code. We have omitted those uncontested parts of complainant's address.

chapter 85 of the family code, under article 17.292 of the code of criminal procedure, or by another jurisdiction as provided by chapter 88 of the family code, (3) knowingly or intentionally (4) goes to or near places as specifically described in the order, including (5) the residence of a protected individual. *See* TEX. PEN.CODE ANN. § 25.07(a)(3)(A) (Vernon Supp.2007). Thus, the residence of a protected individual is a required element of the offense in this case. The address of the residence is descriptive of the residence. Therefore, the address, being descriptive of a necessary element of the offense, is not surplusage. We conclude the trial court's amendment of the information violated article 28.10 of the code of criminal procedure.

■ Relying on *Sodipo v. State*, appellant argues that amending the information on the day of trial over appellant's objection is reversible error not subject to a harm analysis. *See Sodipo v. State*, 815 S.W.2d 551, 556 (Tex.Crim.App.1990) (op. on motion for reh'g) ("We conclude that in order to give effect to the full meaning and intent of Article 28.10, ... the error complained of in the instant case, i.e., that the State should not be permitted to amend a charging instrument on the day of trial prior to commencing trial on the merits over the defendant's objection, should not be subjected to a harm analysis."). In *Wright v. State*, which the court issued ten years after its opinion in *Sodipo*, the court of criminal appeals held that the amendment of an indictment in violation of article 28.10 is subject to a harm analysis. *See Wright v. State*, 28 S.W.3d 526, 531–32 (Tex.Crim.App.2000). The court stated,

> The thrust of appellant's argument is that because he was not properly notified of the amendment to the indictment, he was entitled to no less than a ten-day period to address the change and prepare for trial. We need not determine whether the amendment to the indictment was indeed effective or whether the trial court erred in denying appellant ten days to prepare for trial. Rather, we hold that appellant was not harmed by these events.

*Id.* The court cited *Cain v. State*, which stated, "Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim. App.1997) (footnote omitted). We conclude that *Wright* and *Cain* implicitly overrule *Sodipo's* holding that violations of article 28.10 are reversible without a harm analysis. *See also Barfield v. State*, 202 S.W.3d 912, 921 n. 7 (Tex.App.-Texarkana 2006, pet. ref'd) (despite *Sodipo*, *Cain* requires harm analysis); *Flores v. State*, 139 S.W.3d 61, 66 (Tex.App.-Texarkana 2004, pet. ref'd) (same). Accordingly, we do not reverse for error under article 28.10 unless the record shows reversible error under rule 44.2. *See* TEX.R.APP. P. 44.2.

■ Appellant acknowledges that the error in this issue is statutory, not constitutional, and that rule 44.2(b) is applicable to determine whether the error is reversible. Under rule 44.2(b), any statutory "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). To determine whether the error affected a substantial right, we consider whether the information, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial and whether prosecution under the erroneous information would subject the defendant to the risk of being prosecuted later for the same crime. *Gollihar v. State*, 46 S.W.3d

243, 248 (Tex.Crim.App.2001) (quoting *United States v. Sprick,* 233 F.3d 845, 853 (5th Cir.2000)).

█ A charging instrument that tracks the language of a criminal statute generally possesses sufficient specificity to provide a defendant with notice of a charged offense. *State v. Edmond,* 933 S.W.2d 120, 128 (Tex.Crim.App.1996); *State v. Seibert,* 156 S.W.3d 32, 35 (Tex.App.-Dallas 2004, no pet.). Appellant does not assert that the information failed to inform him sufficiently of the charge against him. The information tracked the language of the statute, identified the complainant, and identified the prohibited location. We conclude the information was not harmful for failing to inform appellant sufficiently of the charge against him.

Appellant asserts the error was harmful because it subjects him to the risk of being prosecuted later for the same crime. Appellant argues that the fact the record contains conflicting evidence of complainant's address—complainant's testimony that her residence is 11617 Hickory Garden Drive and the protective order's language that her residence is 111617 Hickory Garden Drive—would allow the State to prosecute him in the future for violating the protective order by going to the other address on September 12, 2005. In determining whether appellant's prosecution under the erroneous information might leave him at risk for later prosecution for the same crime, we consider the entire record, not just the charging instrument. *See Gollihar,* 46 S.W.3d at 258. In this case, the record is clear that appellant was tried and convicted for going to complainant's residence at 11617 Hickory Garden Drive. There is no evidence appellant went to 111617 Hickory Garden Drive, and the evidence showed complainant did not have a residence at 111617 Hickory Garden Drive on September 12, 2005. The record does not show appellant is at risk for later prosecution for the same offense.

We conclude the trial court's error in amending the information on the day of trial over appellant's objection is not reversible under rule of appellate procedure 44.2(b). We overrule appellant's first issue.

## SUFFICIENCY OF THE EVIDENCE

█ In his second issue, appellant contends the evidence is legally insufficient to support his conviction because, he asserts, there is no evidence he violated the protective order.

In determining the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005).

Appellant argues that no evidence shows his presence at complainant's residence at 11617 Hickory Garden Drive violated the protective order. The protective order prohibited appellant from "[g]oing to or within 500 feet of the residence of Georgetta [sic] Dukes, or a member of the family or household of Georgetta [sic] Dukes, to-wit: 111617 Hickory Garden Dr . . . . and any subsequent residence address that may be taken during the pendency of this protective order . . . ." Appellant argues, "The protective order does not preclude Appellant from going to 11617 Hickory Garden Drive, thus, Appellant is not in violation of the order and that essential element was not proved."

The purpose of a protective order is the protection of individuals from family violence. For the court to enter a protective

order, the court must find (1) the respondent has committed family violence in the past and (2) family violence is likely to occur in the future. TEX. FAM.CODE ANN. § 85.001 (Vernon 2002). The code defines "family violence" as harm or threats of harm to a member of the family or household, abuse of a child in the family or household, and harm or threats of harm to a person in a dating relationship. *Id.* §§ 71.0021, .004. Protective orders can prohibit the respondent from committing family violence; communicating with a protected person in a threatening manner; going to or near the protected person's residence, school, child-care facility, or place of employment; engaging in conduct directed toward a protected person or that person's household that is reasonably likely to harass, annoy, alarm, torment, or embarrass the person (including following the protected person); or possessing a firearm. *Id.* § 85.022 (Vernon Supp.2007). Each of these prohibitions is designed to protect the protected person from the violence or threat of violence of the respondent.

As the statutes governing the issuance of protective orders demonstrate, the provisions permitting the court to prohibit the defendant from coming to or near the protected person's residence are not intended to protect the real property from damage caused by the respondent (although the protective order may incidentally have that result). These provisions protect the protected person from the threat of harm posed by the respondent's mere presence at or near the protected person's residence. The prohibition provides the protected person with the peace of mind of knowing that the respondent is prohibited from coming to or near the residence.

When a protective order prohibits the respondent from going to or near a particular location, such as the protected person's residence, the statutes require that the order "specifically describe" the prohibited location. TEX. FAM.CODE ANN. § 85.022(c); TEX.CODE CRIM. PROC. ANN. art. 17.292(e) (Vernon Supp.2007). However, the statutes also permit the court to omit the description at the request of the protected individual or when the court determines that omitting the description is necessary for the protection of the protected person. TEX. FAM.CODE ANN. § 85.007(a) (Vernon 2002); TEX.CODE CRIM. PROC. ANN. art. 17.292(e). The focus of the statutory provisions is not the protection of a location's land and fixtures; the focus is the protection of the property's use as the residence of a protected person.[2] Under the terms of the statutes, if the property is not used as the protected person's residence or other prohibited location (school, child-care center, etc.), the respondent would not be prohibited from going to it.

In this case, appellant was aware of the terms of the protective order because he was served with the order in court on the day the court signed the order. The protective order prohibited appellant from going to complainant's *residence;* it did not prohibit him from going to any location that was not complainant's residence. The description of the residence in the protective order was correct and specific in terms of the street, city, state, and zip code. All of the digits in the street number were correct and in the correct order with the exception of the extra "1" at the beginning. Complainant testified appellant knew her residence was at number 11617 and not 111617 because he also used to live there and she had not moved.

**2.** We observe the order prohibits appellant from going to the described current address as well as any subsequent address.

Although the protective order prohibited appellant from going within 500 feet of complainant's residence, the record shows appellant went onto the property. We conclude a rational juror could find beyond a reasonable doubt that appellant intentionally or knowingly violated the protective order by going within 500 feet of complainant's residence. Accordingly, appellant has not demonstrated that the evidence is legally insufficient to support his conviction. We overrule appellant's second issue.

## JURY ARGUMENT

■ In his third issue, appellant asserts the trial court erred in denying appellant's motion for mistrial during jury argument when the prosecutor commented on appellant's failure to testify. The following occurred during the State's closing jury argument:

> [Prosecutor]: He broke the law that he signed on to. And you get to hold him responsible.
>
> *He's over here saying I'm not responsible. I'm not guilty.* Y'all—you get to hold him there.

> \* \* \*

> What matters is what he did, and he broke the law, and does he want to take responsibility. That is your responsibility here today. You listen to the evidence, you get to decide who's telling the truth, you get to decide what happened, and *you get to decide whether or not somebody does what they're supposed to and said you know what, I made a mistake.*

> [Defense Counsel]: I'm gonna object to that, Your Honor. The Defendant has no duty to testify at all. He's implying that Mr. Dukes should, you know, jump up and say, I made a mistake.

> That's an improper comment on the Defendant's election not to testify.

> The Court: Sustained.

> [Prosecutor]: I understand—

> [Defense Counsel]: I ask that the jury be instructed to disregard it.

> The Court: Disregard that last statement.

> [Defense Counsel]: Request for a mistrial.

> The Court: Denied.

> [Prosecutor]: *I am in no way saying that this defendant over here has to get up and tell you one thing.* It's my job. I don't take it lightly. I don't. What I'm saying, you make the decision here today. That's your job.

(Emphasis added.)

■ We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Wead v. State,* 129 S.W.3d 126, 129 (Tex.Crim.App.2004). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Archie v. State,* 221 S.W.3d 695, 699 (Tex.Crim.App.2007) (quoting *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App.2004)). In *Archie,* the court of criminal appeals held the three-factor test set out in *Mosley v. State* for review of a denial of a motion for mistrial during jury argument involving nonconstitutional error also applies to the review of a denial of a motion for mistrial following the State's comment on the defendant's failure to testify. *See id.* at 700 (citing *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998), which applied federal law for nonconstitutional error in jury argument and cited *United States v. Millar,* 79 F.3d 338, 343 (2nd Cir.1996), and *United States v. Palmer,* 37 F.3d 1080, 1085 (5th Cir.1994)). The

reviewing court applies the following factors:

1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks);

2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and

3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

*Id.*

In this case, the prosecutor's argument commenting on appellant's failure to testify was brief. Appellant asserts the prosecutor made two other comments on appellant's failure to testify, but he acknowledges he failed to object to those other incidents.[3]

The trial court immediately sustained defense counsel's objection and, in accordance with counsel's request, instructed the jurors to disregard the prosecutor's statement. Appellant complains on appeal that the instruction to disregard was "very generic," did not instruct the jury that the argument was improper, and did not instruct the jury not to consider the improper argument for any purpose. Appellant, however, requested no such instruction; appellant requested that the jury "be instructed to disregard it," and the court instructed the jury to "[d]isregard that last statement." Appellant does not explain why this instruction was not sufficient. Furthermore, the charge instructed the jury that the defendant elected not to testify and that the jury "cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him." *See Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 84.

Considering the final factor, the certainty of conviction and the strength of the State's case, the record shows appellant's seven-year-old daughter, Destiny, was playing outside in the sand with her five-year-old brother when she saw a shadow in the bushes and then saw appellant's face. She testified she saw appellant "r[u]n over to, like, right by the gate." Destiny and her brother then went and told their mother, complainant, that appellant was at the house. Complainant, who is legally blind, testified that appellant's girlfriend drove to complainant's house and asked to speak to complainant. Complainant was standing at the front door speaking to the girlfriend when Destiny pulled her back inside saying, "Mommy, go inside. I think you need to go inside because daddy is around there by the gate." Complainant closed the door and went into the bathroom. Destiny then told her, "Mommy, daddy ran and jumped in the car." Complainant testified she did not see appellant at the house that day. Appellant did not present any witnesses. During jury argument, appellant argued the evidence did not show he was there. He argued that Destiny said appellant was there because she saw his car and not because she had seen appellant. Appellant also argued that if he had been there, Destiny would have spoken to him and she did not. Appellant also argued that he did not violate the protective order because the order did not prohibit him from going to complainant's address. We conclude the State's case was strong and appellant's conviction was fairly certain.

Under the facts of this case, we conclude that, in sustaining appellant's objection and instructing the jury as it did, the trial court sufficiently ameliorated any potential harm. *See Archie*, 221 S.W.3d at 700. Accordingly, the trial court did not abuse

---

**3.** Appellant asserts the first and third italicized passages from the jury argument set out above were also comments on appellant's failure to testify.

its discretion in denying appellant's motion for mistrial. We overrule appellant's third issue.

We affirm the trial court's judgment.